UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THOMAS E. BURTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 1:16-cv-85-WTL-TAB |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration,[1] ) | |
| ) | |
| Defendant. ) | |

### ENTRY ON JUDICIAL REVIEW

Plaintiff Thomas E. Burton requests judicial review of the final decision of the Defendant, Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("Commissioner"), denying Burton's applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. The Court, having reviewed the record and the briefs of the parties, rules as follows.

### I.   APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill automatically became the Defendant in this case when she succeeded Carolyn Colvin as the Acting Commissioner of Social Security on January 23, 2017.

work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b).[2] At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to

---

[2] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to DIB sections only.

2

address every piece of evidence or testimony presented," he must "provide an accurate and logical bridge between the evidence and [his] conclusion that a claimant is not disabled." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). "If a decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, a remand is required." *Id.* (citation omitted).

## II.     BACKGROUND

Burton first applied for DIB in August 2009, alleging that he had been disabled since August 24, 2009. After his application was denied initially and on reconsideration, Burton requested and was granted a hearing in front of an ALJ. On May 17, 2011, Mr. Burton appeared without counsel at an administrative hearing before ALJ John D. McNamee-Alemany. The hearing was continued so that Burton could obtain a representative. On October 4, 2011, Burton appeared with counsel and testified at an administrative hearing before ALJ JoAnn L. Anderson. Robert Lessne testified as a vocational expert. On October 28, 2011, ALJ Anderson decided that Mr. Burton was not disabled. The Appeals Council denied Burton's request for review. Burton appealed to this Court, and in March 2014, this Court reversed and remanded the Commissioner's final decision.

In December 2012, Burton reapplied for DIB and applied for SSI. He alleged that he had been disabled since October 29, 2011—the day after ALJ Anderson's decision. On July 26, 2014, the Appeals Council remanded Burton's 2009 claims to an ALJ for readjudication pursuant to the Court's March 2014 disposition. The Appeals Council also ordered the ALJ on remand to consolidate Mr. Burton's 2012 applications with his earlier applications. On March 5, 2015, Burton appeared with counsel and testified at an administrative hearing before ALJ James R. Norris. In addition, Darius Ghazi, M.D., testified as an orthopedist medical expert; Jack Thomas,

3

Ph.D., testified as a psychological medical expert; and Gail Franklin testified as a vocational expert. The ALJ issued his decision denying Burton's claim on April 8, 2015. After the Appeals Council denied his request for review, Burton filed this timely appeal.

Burton was born on August 1, 1968, and was 41 years old on the alleged disability onset date. He is a high school graduate and is able to communicate in English, but he is illiterate.

### III.    THE ALJ'S DECISION

At step one, the ALJ found that Burton had not engaged in substantial gainful activity since his August 24, 2009 alleged onset date. At step two, the ALJ determined that Burton had a "severe combination of impairments that includes cervical and lumbar degenerative disease, knee arthritis, residual left carpal tunnel syndrome, residuals from a left thumb laceration, myofascial pain syndrome, diabetes, high blood pressure, sleep disorder, obesity, and headaches as well as depression, anxiety and mild intellectual disability." R. at 563. The ALJ found that Burton did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

At step four, the ALJ found that Burton had the residual functional capacity ("RFC") to perform

> a limited range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant could lift and carry up to twenty pounds occasionally and up to ten pounds frequently; the claimant has no restrictions on his abilities to sit and stand; he could stoop occasionally, but could not bend repetitively or . . . climb ladders, ropes and scaffolds; he is restricted to performing simple and repetitive tasks, with only occasional contact with the general public, co-workers and supervisors and no fast paced or assembly line work. The claimant cannot read or write.

R. at 566. Given this RFC, the ALJ determined that Burton was unable to perform any of his past relevant work. At step five, the ALJ relied on Medical-Vocational Guidelines (Grid) Rule 202.20

as a framework with vocational-expert testimony to decide that Burton was not disabled. The ALJ found that Burton could perform two occupations in specified instances: housekeeper (DOT #323.687-014) and laundry worker (DOT #302.685-010). Accordingly, the ALJ concluded that Burton was not disabled as defined by the Act.

## IV.   EVIDENCE OF RECORD

The relevant medical evidence of record is aptly set forth in Burton's brief (Dkt. No. 15) and need not be recited here. Specific facts are set forth in the discussion section below where relevant.

## V.   DISCUSSION

In his brief in support of his complaint, Burton advances two arguments: (1) the ALJ failed to comply with SSR 00-4p; and (2) the ALJ committed error when he concluded that Burton did not meet or equal Listing 12.05(C).

### A. SSR 00-4p

Burton argues that the ALJ erred because he failed to ask the vocational expert ("VE") whether her testimony in response to Burton's attorney's hypothetical question was consistent with the DOT. The ALJ first asked two hypothetical questions, and Burton acknowledges that the ALJ did fulfill his affirmative responsibility[3] with respect to those questions:

---

[3] Social Security Ruling 00-4p has three requirements. First, the ALJ must ask a vocational expert a specific question about the DOT: "When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT." SSR 00-4p. Second, if the vocational expert's testimony appears to contravene the DOT, the ALJ "will obtain a reasonable explanation for the apparent conflict." SSR 00-4p. Third, an ALJ must address in his written decision any conflict between the VE's testimony and the DOT:
> When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination

5

> Q So Ms. Franklin, let me ask you some hypothetical questions. Please assume a hypothetical individual the age of 46 years with a high school education and past relevant work as you've just described, and the hypothetical individual is limited as follows: they would be limited to light work as described by the regulations, that is, lifting 25 pounds occasionally and 10 pounds frequently; and sitting and standing is not restricted. However, repetitive bending, there would be no repetitive bending; only occasional stooping; and no climbing of ladders, ropes, and scaffolds. Additionally, the work must be simple and repetitive, not fast or assembly-line type of jobs, and also involve only occasional contact with the general public, coworkers, and supervisors. . . . . With all those restrictions in the hypothetical, would there be any jobs that would satisfy the hypothetical?
>
> A Yes. Past relevant work would be ruled out, but it would allow for employment as a housekeeper. That's DOT 323.687-014. It is a light strength occupation with an SVP of 2. In Indiana, there are approximately 11,800 positions, with 370,000 positions in the nation. A second choice would be employment as a laundry worker. That's DOT 302.685-010. It is a light strength occupation with an SVP of 2. In the state of Indiana, there are approximately 4,500 positions, with 84,000 positions existing in the nation. A third choice would be employment as a plastics packager, and that's DOT 559.687-074. It is a light strength occupation with an SVP of 2. In Indiana, there are approximately 1,000 positions, with 25,000 positions existing in the nation.
>
> Q . . . Hypothetical number two, please assume all the facts I gave you in hypothetical number one, but then additionally assume that the hypothetical individual, due to symptoms, could not maintain any one position for more than about five or 10 minutes. If you assume that, are there jobs that you gave me still available?
>
> A No, sir, nor would any other jobs be available in the national economy.
>
> Q Okay. All right. Thank you. Has any of your testimony been inconsistent with the Dictionary of Occupational Titles?
>
> A No.

R. at 610-11.

Both of these hypotheticals assumed a person who had a high school education. Burton's attorney then posed his own question that assumed the ALJ's first question but added an inability to read or write. The VE answered as follows:

> A . . . I would allow for employment as the housekeeper and the laundry worker because they both have language and mathematical levels of one, which is

---

or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.
SSR 00-4p.

>as low as it goes. I would rule out, actually, the plastics packager because the math level is a tool [sic], so it may require some mathematics.

R. at 612. As such, when the attorney's hypothetical included the additional limitation that the hypothetical individual could not read or write, the VE removed the plastics packager position as one that the individual could perform. Ultimately, the ALJ determined that Burton cannot read or write. He found that Burton could work as a housekeeper and as a laundry worker.

Burton argues that the ALJ's failure to specifically ask the VE whether her testimony in response to Burton's attorney's hypothetical question was consistent with the DOT was harmful reversible error. The Court disagrees. While an ALJ is required to obtain a reasonable explanation for an apparent conflict if the VE's testimony appears to conflict with the DOT, here no apparent conflict exists. The VE acknowledged that the DOT's lowest General Educational Development ("GED") language level is 1, and the attorney's hypothetical included an assumption that the hypothetical claimant was illiterate. The VE eliminated one possible job after the attorney's hypothetical question included the illiteracy restriction. Because there was no apparent inconsistency, the ALJ was not required to obtain any explanation. As such, no error occurred.

### B. Listing 12.05(C)

Burton argues that the ALJ erred by finding that Burton did not meet Listing 12.05(C), or at least by failing to adequately articulate his reasoning with regard to that issue. The Court agrees. The ALJ did not expressly address Listing 12.05(C) in his opinion, although that Listing was discussed at the hearing.

As the claimant, Burton "has the burden of showing that his impairments meet a listing, and he must show that his impairments satisfy all of the various criteria specified in the listing."

7

*Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). Listing 12.05(C), in relevant part, states the following:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. § 404, Subpt. P, App. 1, 12.05.

Further, the Code of Federal Regulations states that "[t]he structure of the listing for intellectual disability (12.05) is different from that of the other mental disorder listings," as it "contains an introductory paragraph with the diagnostic description for intellectual disability [and] . . . four set of criteria (paragraphs A through D). If . . . [the claimant's] impairment satisf[ies] the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing." *Id.* Hence, a claimant must first satisfy Listing 12.05(C)'s prerequisite of "subaverage general intellectual functioning and deficits in adaptive function initially manifested during the developmental period . . . ," and then satisfy one of the four criteria showing severity. *Id.*; *see also Novy v. Astrue*, 497 F.3d 708, 710 (7th Cir. 2007) (stating that "the key term in the introductory paragraph of section 12.05 of the regulation . . . is 'deficits in adaptive functioning.'"). In short, to meet Listing 12.05(C), a claimant must show: (1) significantly subaverage intellectual functioning with deficits in adaptive functioning prior to age twenty-two; (2) a valid verbal, performance, or full scale IQ of

8

60 through 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function. *Novy v. Astrue*, 497 F.3d 708, 709 (7th Cir. 2007).

### *1. Prong Three of Listing 12.05(C)*

The ALJ found that Burton suffered from severe impairments not related to his low intellectual functioning, thus meeting that portion of 12.05(C) requiring "a physical or other mental impairment imposing an additional and significant work-related limitation of function." The ALJ's step two analysis identified as severe Burton's combination of impairments that includes cervical and lumbar degenerative disease, knee arthritis, residual left carpal tunnel syndrome, residuals from a left thumb laceration, myofascial pain syndrome, diabetes, high blood pressure, sleep disorder, obesity, and headaches as well as depression, anxiety and mild intellectual disability. As "severe," these impairments by definition are ones that "significantly limit [ ] [Burton's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

### *2. Prong Two of Listing 12.05(C)*

Burton had two sets of IQ scores to consider when analyzing the second prong of Listing 12.05(C)—whether the claimant has a valid verbal, performance, or full scale IQ of 60 through 70. As laid out by the ALJ's decision:

> IQ scores posted on the school records show a verbal IQ of 69, a quantitative IQ of 78 and a nonverbal IQ of 73. . . .
>
> Dr. Christopher administered the Wechsler Adult Intelligence Scale-Fourth Edition on April 15, 2013. The claimant obtained a verbal comprehension index of 58; a perceptual reasoning index of 65; a working memory index of 69; a processing speed index of 59; and a full scale IQ of 57.

R. at 572. Dr. Christopher diagnosed Burton with borderline intellectual functioning.

9

Dr. Amy Meyer conducted a consultative examination on January 7, 2013, and her report indicated that "no symptoms of mental retardation are present." R. at 572. Dr. Dawn Doup conducted a consultative examination on September 8, 2014, and diagnosed Burton with mild intellectual disability. The ALJ's decision found that Dr. Meyers' and Dr. Doup's assessments were entitled to considerable weight.

The ALJ provided the following analysis of the testimony of Dr. Jack Thomas, the pschological expert:

> Dr. Thomas noted the claimant's recent intelligence test scores, but explained that the claimant is not mentally retarded, noting that he does not have the required corresponding deficits in adaptive functioning and does not have a job history that is consistent with mental retardation. Dr. Thomas indicated that the scores obtained by Dr. Christopher are an underestimate of the claimant's ability. Dr. Thomas noted that while the claimant has some type of cognitive issue, he is not mentally retarded and does not meet the adaptive functioning requirement. . . . Dr. Thomas has presented a good explanation of his opinion, which is well grounded in the medical evidence and consistent with the record as a whole, therefore his opinion has a comprehensive foundation. . . . It is a high-quality opinion and entitled to great weight.

R. at 573-74.

The second prong of Listing 12.05(C) is satisfied if just one of the three types of IQ scores (verbal, performance, or full scale) falls within the range. The ALJ did not expressly find Burton's school testing invalid. As such, even though the ALJ discounted the scores obtained by Dr. Christopher's testing, Burton's school record verbal IQ of 69 satisfies the second requirement of Listing 12.05(C). As such, the finding that Burton did not have a valid IQ within the range of Listing 12.05(C) is not supported by substantial evidence.

*3. Prong One of Listing 12.05(C)*

Burton's low IQ score and additional impairments, however, are not enough by themselves to meet Listing 12.05(C). He must also demonstrate significantly subaverage general

10

intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; that is, an onset of the impairment before age twenty-two. *See Novy,* 497 F.3d at 709.

The Seventh Circuit has stated that the term "deficits in adaptive functioning" in Listing 12.05C means an "inability to cope with the challenges of ordinary everyday life." *Id.* at 710 (citation omitted). While the ALJ discusses Burton's activities of daily living at the time of the hearing, he fails to address evidence of adaptive functioning that initially manifested before Burton was twenty-two. As such, the ALJ's step three finding was deficient. Burton met his burden of submitting evidence that reasonably raises the question of whether Listing 12.05 applies, and the ALJ was accordingly obligated to analyze that Listing. *See Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) ("[A]n ALJ should mention the specific listings he is considering and his failure to do so, if combined with a 'perfunctory analysis,' may require a remand."). Remand is therefore required for the ALJ to properly assess whether Burton's symptoms meet or equal Listing 12.05.

## VI.     CONCLUSION

For the reasons set forth above, the decision of the Commissioner is **REVERSED AND REMANDED** for further proceedings consistent with this Entry.

**SO ORDERED: 3/23/17**

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana


Copies to all counsel of record via electronic communication.